## Elder's Appeal.    McDivit's Estate.

A. was the executor of his father and authorized to sell his real estate. He agreed, in 1864, with his sisters B., C., D. and E., to convey to them certain real estate, " to hold their titles to the extent of their respective interests in the estate" of their deceased father.    In pursuance of this agreement, in 1866, a deed was made accordingly, and on the same day they reconveyed to A. the deed, reciting that " the interest hereby conveyed to the said grantee is as $7473.51 is to $2619.22 for the said B., for the like sum of $2619.22 for the said C., the like sum of $2619.22 for the said D., and the sum of $4669.60 for the said E., the sum of $20,002.96 being the total amount of the respective interests of the said parties in the said real estate."  On the 1st of October 1875, the administrator of A. agreed with B., C., D. and E. that the above amounts " shall be regarded as the amounts due to said parties by A., in full and final settlement of their respective shares of their father's estate, out of the estate of A., and for the payment of which the estate of A. is regarded as liable."    Held, that this latter agreement liquidated the claims of the sisters, and converted the same from an interest in the land to a claim against the estate of A., and that in the distribution of the proceeds of his estate they were entitled to interest on their claims from October 1st 1875, the same as other creditors were entitled to interest on their claims.

May 19th 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Orphans' Court of *Adams county*: Of May Term 1880, No. 116.

Appeal of James A. Elder, a creditor of Joseph P. McDivit, deceased, from the decree of the court allowing interest on certain claims made in the distribution of the estate of said decedent. James McDivit died in 1858 leaving a will wherein he directed his property, real and personal, to be sold by his executor, and appointed his son, Joseph P. McDivit, his sole executor.    On the 1st of July 1864 the said executor entered into an agreement, wherein he agreed to sell and convey to Alexander Rider, Mary McDivit, Martha McDivit and Julia J. McDivit, certain portions of the real estate of James McDivit, deceased, the said Rider to pay $2500, and the other four to hold their titles to the extent of money paid and their respective interests in the estate of the aforesaid decedent, James McDivit.    It was also agreed " by and between all the parties to the foregoing agreement, that when the titles are made for the several tracts of land mentioned in the said agreement that the parties of the second part, grantees in the said deeds, shall convey to the said Joseph P. McDivit an interest in the share with themselves in the several tracts, each party to hold to the extent of money paid on said tracts or legacies due or coming due to them under the will of decedent, the extent of the several and respective interests of the holders to be designated upon the back of the deeds, and all the rents, issues and profits accruing from April 1st 1864 in the premises above described, to be settled and divided between the parties according to their several and respective interests in the property."

On the 2d of August 1866, in pursuance of the above agreement, the said Joseph P. McDivit conveyed to the parties of the second part in said agreement the real estate therein mentioned, and on the same day, for the consideration of $7473.50, the said grantees reconveyed the same to Joseph P. McDivit, "together with all and singular the buildings and improvements thereon made or erected, profits, commodities, advantages, emoluments, hereditaments and appurtenances whatever, to the said described undivided interest in said tracts of land belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof; also all the estate, right, title, interest, use, possession, property, claim and demand whatsoever, of them the said parties of the first part, in law and in equity, or otherwise, howsoever, of, in, to or out of the same, to have and to hold the said undivided interest in the tracts of land as above described, and the premises hereby granted, mentioned or intended so to be, with the appurtenances, unto the aforesaid Joseph P. McDivit, his heirs and assigns for ever, to his only proper use, benefit and behoof, and to and for no other intent, meaning or purpose whatsoever.

"The interest hereby conveyed to the said grantee is as $7473.51 for the said Joseph P. McDivit is to $2619.92 for the said Mary McDivit, the like sum of $2619.92 for the said Martha McDivit, the like sum of $2619.92 for the said Julia J. McDivit, and the sum of $4669.69 for the said Sarah Rider, the sum of $20,002.96 being the total amount of the value of the respective interests of the said parties in the real estate hereinbefore described, and of certain real estate in Maryland, adjoining first described tract."

On the 1st of October 1875 an agreement (called agreement Z) was entered into, which, after a recital of the foregoing facts and deeds, proceeded, "And whereas Joseph P. McDivit is now deceased, and letters of administration on his estate have been granted to Mary J. McDivit and James A. Elder, and it is desired to adjust amicably the respective amounts due to the legatee and devisees under the will of James McDivit and their representatives, it is hereby agreed by and between Martha McDivit, Julia J. McDivit and Alexander J. Rider, executor of the will of Sarah Rider, deceased, on the one part, and Mary J. McDivit and James A. Elder, administrators of the estate of Joseph P. McDivit, as follows: The respective amounts mentioned in connection with the respective names in said deed, to wit, Mary McDivit, $2619.92 ; Martha McDivit, $2619.92 ; Julia J. McDivit, $2619.92 ; Sarah Rider, $4669.60, shall be regarded as the amounts due and coming to said parties by said Joseph P. McDivit, as executor of the estate of James McDivit, in full and final settlement of their respective shares, parts, portions and legacies out of the estate real, personal and mixed, out of the estate of James McDivit, deceased, and for the payment of which the estate of Joseph P.

[Elder's Appeal.]

McDivit. is regarded as liable, and these respective amounts shall be paid to said parties out of the estate of Joseph P. McDivit, if upon a final settlement thereof it be solvent, and the said real estate sell for $20,002.96; but if said real estate be sold for less or more than this last-mentioned amount, then the amounts of indebtedness are to be increased or decreased accordingly in a proportionate rate; the part and portion of said Mary McDivit, now deceased, is to be paid to the persons legally entitled thereto.

"And on the receipt of these respective sums after a proportionate adjustment ascertained from a sale of said real estate, the said parties receiving said moneys, agree on their part to make, execute and deliver to the purchasers of said real estate, or to whomsoever the said administrators of Joseph P. McDivit desire, a full and complete quit-claim deed of all and every interest which they may have in said real estate, so that the purchaser or holder thereof shall hold. it free and clear from any claim which possibly might exist in any persons by reason of what is contained in said deed, executed and delivered to Joseph P. McDivit, bearing date August 2d 1866."

A portion of the real estate of Joseph P. McDivit was sold, and the fund brought into court for distribution. The claims of Martha and Julia McDivit, Rider and the representative of Mary McDivit were presented to the auditor, and he found that the relation between said parties and the estate of Joseph P. McDivit was that of debtor and creditor, and allowed them a dividend. Subsequently, the remainder of the real estate of said Joseph P. McDivit was sold, and a second auditor appointed to distribute the fund arising from said sale. The auditor distributed the balance in the hands of the administrators, pro rata, to all the creditors. Exceptions were filed to this report, which the court, Herman, P. J., of the Ninth Judicial District, dismissed, in an opinion, saying:

" That the sisters of Joseph P. McDivit retained an interest in the land described in their deed to him of August 2d 1866, is, I believe, clear, but the effect of the agreement of October 1st 1875 was to extinguish that interest by converting it into an indebtedness against his estate, and fixing the method of ascertaining the amount to which each sister should be entitled. The parties to this agreement were fully competent to make it, and it was doubtless to the best interest of all the parties, as well as the creditors of Joseph, that the matter should have been settled in this way. As soon as the agreement was made, the sisters stood in the relation of creditors to Joseph's estate, as much entitled to be paid as his other creditors, and as much entitled to interest for the delay of payment.

" In ascertaining the amount of this indebtedness, the whole amount of sales of all the land sold by the administrators, must be taken into account. Having in this way ascertained the amounts

due to each, interest should be allowed from October 1st 1875, the date of the agreement. Then, as the sisters did not receive on the former audit a pro rata on the full amounts of their respective claims, this deficiency should be first made up to them out of the fund now for distribution, so as to equalize them with the other creditors, and, after this has been done, a pro rata with the other creditors should be awarded to them on the remainder of their claims. * * *

"And now, to wit, September 22d 1879, the auditor's report is hereby re-committed to same auditor, with instructions to modify and correct his report in accordance with this opinion."

The auditor then allowed interest on said claims from the date of the agreement, October 1st 1875 to July 12th 1879.

Elder, who was a creditor, took this appeal, and alleged that the court erred in allowing interest.

*W. A. Duncan*, for appellant.—The agreement does not stipulate for interest on the claims adjusted. The products, "rents, issues, profits," of the lands, out of which these claims arise, are not accounted for by the administrators in their accounts, and are not included in the funds distributed. The claimants having an interest in the lands could not claim interest until the lands were sold. The estate being insolvent this agreement cannot bind non-assenting creditors. These claimants were only to become creditors upon executing to purchasers quit-claim deeds.

*David Wills*, for appellees.—The claims of the appellees were debts, for the payment of which the estate of Joseph P. McDivit was liable. It was liable for the payment of them at his death. But the parties, by agreement, determined the character of them, and the appellees claimed interest from the date of the agreement, to wit, October 1st 1875 to July 12th 1879, and the court decreed it to them. Why should their claims not be entitled to interest? The fact that they could not be paid until the land was sold, does not prevent them from bearing interest. No payment was made on the other indebtedness until the land was sold, but this did not stop the running of interest. It is to be presumed that the decedent settled with the appellees, and paid them the interest on their claims prior to his death. They make no claim for interest further back than the date of the agreement. The appellees have not an interest in the lands, and have not received any share of the rents, issues and profits, and if not allowed interest would not be placed on an equality with the other creditors of the estate.

Mr. Justice PAXSON delivered the opinion of the court, June 19th 1880.

This case is singular in its obscurity. This peculiarity runs all

[Elder's Appeal.]

through it, and is nowhere more apparent than in the agreements and deeds of the parties upon which this litigation is based. Nor does the record, as printed, throw much light upon the case. The appellant appeals as a creditor of the estate of Joseph P. McDivit, yet, there is not a word in his paper-book to show that he is a creditor, and, but for the admission in the counter-statement of the appellees, we would be justified in dismissing his appeal for that reason. A portion only of the auditor's report is printed, and from it we can form but an imperfect idea of the condition of the estate, and of the position of the respective claimants thereon. If our conclusions are not as satisfactory as they might be, it is owing to the imperfect manner in which the case is presented, and the feeble light thrown upon it by the proceedings below.

There appears to be only one question, viz., that the court erred in allowing interest on the claim of the appellees. It is as clear as anything can be in such an obscure case, that under the agreement of July 1st 1864, and the deed of August 2d 1866, the appellees retained an interest in the land conveyed by them to Joseph P. McDivit. The amount of their interests, respectively, was estimated in dollars merely for the purpose of showing the proportion or share owned by each. Thus, the whole was valued at $20,002.96; the interest of Mary McDivit was $2619.92, that is to say, her interest in the property was in the precise proportion of $2619.92 to $20,002.96. The agreement of July 1st 1864, provides that the rents, issues and profits accruing from April 1st 1864, should be divided between the parties according to their several and respective interests in the property. The deed of 1866 is silent as to the profits. Agreement "Z" was made on the 1st of October 1875, between the appellant as administrator of the said Joseph P. McDivit and the appellees, and liquidates the interests of the said appellees, and converts the same from an interest in the land to a claim against the estate of McDivit. The agreement means this or nothing. It says that the respective amounts "shall be regarded as the amounts due and coming to said parties by said Joseph P. McDivit, as executor of the estate of James McDivit, in full, and final settlement of their respective shares, parts, portions and legacies out of the estate, real, personal and mixed of James McDivit, deceased, and for the payment of which the estate of Joseph P. McDivit is regarded as liable." This liquidation was subject, however, to the contingency of the real estate selling for $20,002.96. If it sold for less the liquidated claims were to abate proportionably. But if abated for such reason, why not draw interest? It is too clear for argument that after the execution of agreement "Z," the rents, issues and profits belonged to Joseph P. McDivit. The appellees have no claim thereon, as their interest in the land was turned into a claim against the estate of the deceased executor. They thus

13 NORRIS—30

[Elder's Appeal.]

became mere creditors of the estate, and as such are as much entitled to interest as are the other creditors.

　　　　　The decree is affirmed, and the appeal dismissed at the costs of the appellant.

Mr. Justice GORDON, dissented.